UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

           Plaintiff/Respondent,

Criminal Case No. 2:18-cr-20302-1
Civil Case No. 2:20-cv-11209

v.

HONORABLE STEPHEN J. MURPHY, III

AARON WRIGHT,

           Defendant/Petitioner.
_____/

**OPINION AND ORDER**
**DENYING MOTION TO VACATE SENTENCE UNDER 28 U.S.C. § 2255 [60]**

Defendant Aaron Wright pleaded guilty to child exploitation enterprise in violation of 18 U.S.C § 2252A(g). ECF 47, PgID 610. The Court sentenced Defendant to 504 months in prison. *Id.* at 611.

Defendant timely petitioned for a writ of habeas corpus under 28 U.S.C. § 2255. ECF 60. Defendant's counsel later submitted a brief to support the petition. ECF 64. The Government responded to the petition, ECF 67, and Defendant replied, ECF 70. The Court reviewed the filings and a hearing is unnecessary. *See* E.D. Mich. L.R. 7.1(f)(1). For the following reasons, the Court will deny the motion.

**BACKGROUND**

Defendant spent several years during his late thirties and early forties as a "talker" in an online group of men that targeted young girls to produce child pornography. ECF 30, PgID 223; *see* ECF 57, PgID 678 (the Government agreeing that Defendant was talker). As a talker, Defendant messaged young girls in a

1

chatroom and dared the girls to engage in sexual acts. ECF 30, PgID 225. Defendant would record the girls showing their "genitals, masturbating, and [doing] other sexual acts" that are too graphic to detail here. *Id.* at 225–28. Defendant later saved the videos of the girls on his computer and would share the videos with other members in his criminal group. ECF 30, PgID 224–26. Because of Defendant's crimes, many victims ultimately inflicted self-harm on themselves while other victims even attempted suicide. ECF 57, PgID 670, 682. Defendant and his criminal group targeted not only teenagers, but also preteens. *See* ECF 30, PgID 226–28.

Apart from recording these victims, Defendant spoke very cruelly about the victims. As the Government recalled at sentencing, for example, Defendant called "a 14-year-old girl a bitch for not engaging in sexual activity with her 12-year-old cousin." ECF 57, PgID 678.

At Defendant's arrest, Government agents found an enormous child pornography collection: 9,000 videos totaling more than 920 hours. *Id.* at 676–77. Defendant had 445 videos of just *one* victim. *Id.* at 681. Other videos showed sexual abuse of infants and toddlers. *Id.* at 675.

After Defendant's guilty plea, the Sentencing Guidelines suggested that Defendant receive a life term in prison. ECF 30, PgID 229. The mandatory minimum sentence for Defendant's crime was 240 months in prison. *Id.*

At sentencing, the Court stressed that the evidence showed "a level of anger and brutality and criminality toward the victims that [from the Court's] perspective [was] notable." ECF 57, PgID 689. The Court also noted that Defendant had used an

2

elaborate computer and VPN to evade law enforcement while he committed his crimes. *Id.* at 689. The Court, however, recognized that a life sentence was improper because, at sentencing, Defendant showed a "deep sense of regret." ECF 57, PgID 690. The Court therefore sentenced Defendant to 504 months in prison. *Id.* at 692.

Defendant timely challenged his sentence under 28 U.S.C. § 2255 based on two ineffective assistance of counsel claims. Defendant first argued that his trial counsel failed to present mitigating evidence at his sentencing. ECF 60, PgID 730. Defendant's second claim argued that his trial counsel also offered flawed advice over his cooperation with the Government and the plea process. *Id.* at 731.

## LEGAL STANDARD

A defendant sentenced by a federal court may seek "to vacate, set aside, or correct the sentence" under 28 U.S.C. § 2255(a). The statute provides four grounds for claiming relief: "(1) that the sentence was imposed in violation of the Constitution or [federal] laws [], (2) that the [C]ourt [lacked] jurisdiction to impose [the] sentence, (3) that the sentence was in excess of the maximum authorized by law, and (4) that the sentence is otherwise subject to collateral attack." *Hill v. United States*, 368 U.S. 424, 426–27 (1962) (quoting 28 U.S.C. § 2255) (internal quotation marks omitted). Generally, the motion must allege "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001) (citation omitted).

**DISCUSSION**

The Court will deny each ineffective assistance of counsel claim in turn. After, the Court will deny a certificate of appealability and in forma pauperis status on appeal.

I.   Ineffective Assistance of Counsel

"Defendants alleging the ineffective assistance of counsel bear 'a heavy burden of proof.'" *Pough v. United States*, 442 F.3d 959, 966 (6th Cir. 2006) (quoting *Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005)). To succeed on an ineffective assistance of counsel claim, Defendant must show: (1) that his counsel's representation "fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

   *A.   Sentencing*

For the first claim, Defendant argued that his trial counsel, Mr. Alvin Keel, was ineffective at sentencing because Mr. Keel did not present the Court with statistics about the life expectancy of prisoners. ECF 64, PgID 759–60. Defendant believed that if Mr. Keel had presented the statistics to the Court, then the Court would have not sentenced Defendant to 42 years in prison. *Id.* at 767–78. Rather, Defendant believed that there was a reasonable chance that the Court would have sentenced him to a term "far closer to the 20-year minimum" sentence. *Id.* at 767.

To address the first *Strickland* prong, the Court must "strongly presume" that Mr. Keel "rendered adequate assistance and made all significant decisions in the

exercise of reasonable professional judgment." 466 U.S. at 690. "Working from this presumption, the [C]ourt should resist 'the temptation to rely on hindsight.'" *Poulsen v. United States*, 717 F. App'x 509, 514 (6th Cir. 2017) (quoting *Carson v. United States*, 3 F. App'x 321, 324 (6th Cir. 2001)). The Court must judge Mr. Keel's performance based "an objective standard of reasonableness." *United States v. Arny*, 831 F.3d 725, 731 (6th Cir. 2016) (quotation omitted).

Defendant cannot overcome the strong presumption that Mr. Keel rendered effective assistance for two reasons. First, Mr. Keel rendered adequate assistance by arguing at sentencing that a 20-year sentence would adequately protect the public because Defendant was already 44 years old. ECF 57, PgID 673–74. Mr. Keel also highlighted that Defendant would likely die in prison if subjected to a 45-year sentence. *Id.* Mr. Keel did not need statistics to point out the obvious: Defendant's chances of living into his seventies and eighties would decrease as he aged.

Second, the statistics that Defendant claimed Mr. Keel should have offered would not have improved Mr. Keel's sentencing argument. The study that Defendant relied on looked at a New York state parolee population from 1989 to 2003. ECF 64-6; *see, e.g.*, Evelyn J. Patterson, The Dose-Response of Time Served in Prison on Mortality: New York State, 1989–2003, 103 Am. J. Pub. Health 523 (2013) https://bit.ly/35KCy29 [https://perma.cc/D3PN-3WWK]. The study would not have improved Mr. Keel's argument for four reasons.

One, the study looked only at the New York state parolee population—not a federal prison population. ECF 64-6, PgID 856. Two, the sample population is

5

outdated by nearly 20 years. *Id.* Three, the sample population in no way reflects Defendant's characteristics. For example, less than 20% of the sample population was non-Hispanic white, only 21% percent of the population had education beyond high school, and less than 20% of the population was between the ages of 35 to 44 years old. *Id.* at 857. Defendant is a non-Hispanic White, with education beyond high school, and, at sentencing, he was 44 years old. Last, the study's finding that each year of prison leads to a two-years' decline in life expectancy rested on the possibility of death while on *parole*—not while in *prison. Id.* at 856–57. If Mr. Keel had presented the Patterson study at sentencing, then the study would have stymied Mr. Keel's otherwise compelling argument because the Court would have challenged Mr. Keel about the flaws that the Court just addressed.[1] In all, Defendant has not overcome the strong presumption that Mr. Keel offered anything but adequate assistance under *Strickland*'s first prong.

Moving to the second *Strickland* prong, to prove prejudice Defendant must prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Defendant cannot show prejudice under *Strickland*'s second prong because Defendant mischaracterized why the Court sentenced him to a below-Guidelines sentence. The Court did not find "that a life term—whether de jure or de facto—was

---

[1] See, for example, *Kitchen v. Whitmer*, 486 F. Supp. 3d 1114, 1125–26 (E.D. Mich. 2020) for Judge Laurie J. Michelson's long discussion about the difficulty of relying on prisoners' life expectancy studies—including the study Defendant cited.

not called for in this case." ECF 64, PgID 762–63. Rather, the Court merely found that although "a life sentence might be called for," Defendant's acceptance of responsibility "convince[d] [the Court] that a life sentence would not be appropriate." ECF 57, PgID 690. In other words, the Court found *only* that departing from the Guidelines was appropriate.

From there, the Court decided whether to sentence Defendant to the Government's requested sentence of 45 years in prison or "somewhere less than that." *Id.* The Court also noted that going down to Defendant's requested sentence of 20 years in prison would have been "an unreasonable variance downward" and "would insult the [G]overnment lawyers, the agents who have worked on the case on behalf of the victims who expect and demand more, and . . . society." *Id.* at 691. The Court then noted that sentencing Defendant to 45 years in prison would have left Defendant in prison until he was eighty-nine years old, *id.* at 691, which, as Mr. Keel pointed out, would not further protect society, *id.* at 673–74. In short, the Court never found that a de facto life term was improper; the Court found only that a de jure life term was improper. Based on that finding, Defendant has not shown a reasonable probability that the Court would have sentenced him to a lesser sentence.

## B. *Plea Process and Government Cooperation*

For the last *Strickland* claim, Defendant argued Mr. Keel was ineffective during the plea process because he offered flawed advice during Defendant's cooperation with the Government. ECF 64, PgID 768. Defendant specifically claimed that Mr. Keel failed "to investigate and warn against the pitfalls" related to the

7

Government's proffer. *Id.* at 772. The Government's proffer, according to Defendant, was a trick. *Id.* at 771. Defendant alleged that he would have insisted on going to trial if Mr. Keel had properly advised him. *Id.* at 773.

Defendant again cannot overcome the "strong presumption" under the first *Strickland* prong that Mr. Keel provided adequate counsel. *Pough*, 442 F.3d at 966. To start, Defendant inaccurately described his proffer with the Government as "subterfuge." ECF 64, PgID 771. As the Government explained at sentencing, Mr. Keel and Defendant met with the Government in a "reverse proffer" where the Government would "convince [Defendant] about the kind of evidence . . . against him." ECF 57, PgID 676. To be sure, Defendant's recalled that "[a]t the proffer, the [G]overnment made clear that it would not reduce the charge, and that if [he] went to trial, the prosecutor would seek a life sentence. The [G]overnment made a presentation with the intent of convincing me not to go to trial." ECF 64-2, PgID 779–80. Without more facts, nothing is impliedly unreasonable about Mr. Keel's professional decision to allow his client to attend the reverse proffer. *See Pough*, 442 F.3d at 967 (denying ineffective assistance of counsel claim because the decision to cooperate was a "tactical decision" and "there was never a guarantee that the [G]overnment would [move under Federal Rule of Criminal Procedure 35].").

Yet Defendant claimed that attending the reverse proffer, without obtaining a sentencing departure from the Government, "effectively shut [him] out of going to trial[] because his statements may be used against him if he makes any defense inconsistent with them." ECF 64, PgID 770. Defendant believed that Mr. Keel did not

8

"properly advise [Defendant] concerning the risks of proffering and the possibility that the proffer session might not have been entered into in good faith." ECF 64, PgID 771 (emphasis omitted). In simpler terms, Defendant believed that the Government tricked him into giving up information so that the Government could use it against him at trial. ECF 64-2, PgID 780–81.

Defendant still cannot overcome the strong presumption that Mr. Keel adequately represented him because Defendant has not presented enough evidence to show that Mr. Keel was ineffective. For one, "an ultimate cooperation meeting never took place." ECF 57, PgID 676. For another, Defendant has not offered the alleged proffer agreement. "Generally, statements made by defendants in proffer sessions are inadmissible under Rule 410 of the Federal Rules of Evidence." *United States v. Shannon*, 803 F.3d 778, 783 (6th Cir. 2015) (citation omitted). But statements are admissible if the statement fits within the proffer agreement's waiver provision. *Fifer v. United States*, 660 F. App'x 358, 364 (6th Cir. 2016). Thus, without a record of the cooperation meeting happening and without the proffer agreement, the Court cannot determine whether Defendant was at risk of having any statements used against him at trial. As a result, the Court cannot find that Mr. Keel was ineffective.

What is more, Defendant has not shown that Mr. Keel's "strategy was objectively unreasonable under the circumstances." *Id.* at 365. Defendant had a mountain of evidence against him, prosecutors who were not backing down from the Guidelines sentence of life in prison, and a limited ability to assist in the

9

Government's probe because his arrest occurred well after the Government arrested the other men in Defendant's criminal enterprise. ECF 57, PgID 676 (Defendant was "caught after most of [his] cohorts in the United States were caught."). In the end, Mr. Keel had only two possible strategies: either allow Defendant to go to trial, which Defendant would have struggled to win, so that Defendant could ensure a life sentence, or try to offer the Government information in exchange for recommending a below-Guidelines sentence. Mr. Keel suggested option two. At bottom, Defendant cannot overcome the strong presumption that Mr. Keel offered effective assistance of counsel.

Next, Defendant cannot show prejudice under *Strickland*'s second prong for two reasons. First, Defendant had no right to a sentencing departure. As Defendant's counsel noted at sentencing, a cooperation agreement's effect on sentencing "rests solely at the discretion of the [G]overnment." ECF 57, PgID 663. Federal law and the Sentencing Guidelines confirm that the Government has sole discretion to move for a sentence below a statutory minimum. 18 U.S.C. § 3553(e) ("Upon motion of the Government, the court shall have the authority to impose a sentence below a [mandatory minimum]."); U.S.S.G. § 5k1.1 ("Upon motion of the [G]overnment stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines."). Defendant also confirmed that he could not help the Government prosecute another person because he could only identify victims of his heinous crimes. ECF 64, PgID 768 ("[Defendant] proffered to the [G]overnment in the

hope that the information he could provide concerning the whereabouts of minor victims could limit his sentencing exposure."). For those reasons, Defendant had no chance at receiving a sentencing departure from the Government. *See* 18 U.S.C. § 3553(e) (noting that a defendant could *only* receive a sentence below a statutory minimum if the defendant provided "substantial assistance in the investigation or prosecution of another person who has committed an offense").

Second, Defendant cannot reasonably show that he would have gone to trial if Mr. Keel's performance was different. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985) ("[T]o satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."). Defendant "cannot make that showing merely by telling [the Court] now that []he would have gone to trial then if []he had gotten different advice." *Pilla v. United States*, 668 F.3d 368, 373 (6th Cir. 2012). "The test is objective, not subjective; and thus, 'to obtain relief on this type of claim, [Defendant] must convince the [C]ourt that a decision to reject the plea bargain would have been rational under the circumstances.'" *Id.* (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)).

Defendant cannot satisfy this objective test. First, "the evidence of [Defendant's] culpability was overwhelming." *Hunter v. United States*, 160 F.3d 1109, 1115 (6th Cir. 1998). And second, going to trial would have likely led to Defendant facing a life sentence after a guilty verdict. *See id.* ("[W]e find it highly improbable that [Defendant] would ever have gone to trial rather than plead guilty . . . the

possible sentence he faced was far greater than what he got under his plea agreement."). Although Defendant's Guidelines range was life in prison, the Government recommended a below-Guidelines sentence of 45 years in prison, "which was clearly a boon to [Defendant]." *Id.*; *see* ECF 37, PgID 265. Indeed, the Court noted that Defendant's "deep sense of regret . . . convince[d] [the Court] that a life sentence would not be appropriate." ECF 57, PgID 690. Put differently, Defendant gave himself a chance to spend some part of his future outside prison only because he accepted responsibility for his atrocious crimes against vulnerable, young girls. In sum, Defendant cannot reasonably show prejudice under Strickland's second prong and the claim is denied. The Court will therefore deny the motion to vacate the sentence.

II.  Certificate of Appealability and Proceeding In Forma Pauperis on Appeal

To appeal the Court's decision, Defendant must obtain a certificate of appealability. To obtain a certificate of appealability, Defendant must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Thus, Defendant must show "that reasonable jurists could debate whether" the Court should have resolved the § 2255 motion "in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (internal quotation marks and quotation omitted). Jurists of reason would not debate the Court's denial of the motion. The Court will therefore deny a certificate of appealability.

The Court will also deny Defendant leave to appeal in forma pauperis because he cannot take an appeal in good faith. *See* Fed. R. App. P. 24(a).

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the motion to vacate sentence under 28 U.S.C. § 2255 [60] is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that leave to proceed in forma pauperis on appeal is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court must **CLOSE** Civil Case No. 2:20-cv-11209.

**SO ORDERED.**

                                              s/ Stephen J. Murphy, III
                                              STEPHEN J. MURPHY, III
                                              United States District Judge

Dated: July 7, 2021

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 7, 2021, by electronic and/or ordinary mail.

                                              s/ David P. Parker
                                              Case Manager